**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CIVIL DIVISION**

**DONNA FINKEL and JOHN CIVETTI**
801 N. Victoria Park Road
Ft. Lauderdale, FL 33304

                Plaintiffs,          Case No. 17-CV-

        v.

                                Trial By Jury Demanded

**M&T BANK,**
℅ Robert G. Wilmers, Chairman & CEO
1 Fountain Plaza
Buffalo, NY 14202

        and

**BAYVIEW LOAN SERVICING, LLC**
℅ Corporation Service Company
1201 Hays Street
Tallahassee, FL 32301

                Defendants.
_____/

## <u>COMPLAINT FOR DAMAGES WITH JURY DEMAND</u>

      Plaintiffs, Donna Finkel and John Civetti, by and through counsel, for their Complaint

against Defendant M&T Bank and Defendant Bayview Loan Servicing, LLC, and in support

thereof state:

      1.    Plaintiffs Donna Finkel and John Civetti ("Plaintiffs" or "Borrowers"), are the

owners of real property located at and commonly known as 801 N. Victoria Park Road, Ft.

Lauderdale, FL 33304 (the "Home").

      2.    Borrowers currently maintain the Home as their primary, principal residence and

has so maintained for all times relevant to the allegations of this Complaint.

3.      Defendant Bayview Loan Servicing ("Bayview") is the master servicer of a note (the "Note") and a mortgage on the Home that allegedly secures the Note (the "Mortgage") (collectively referred to hereinafter as the "Loan").

4.      Defendant M&T Bank. ("M&T") is the current sub-servicer on the Loan having been contracted by Bayview to perform certain aspects regarding the servicing of the Loan.

5.      M&T has been the sub-servicer of the Loan, Bayview has been the Master Servicer of the Loan, and M&T and Bayview (collectively, "Defendants") have acted in such capacities since February 15, 2014, when Bayview acquired servicing rights to the Loan from non-party J.P. Morgan Chase Bank. ("Chase").

6.      Non-Party Federal  National Mortgage Loan Corporation ("Freddie Mac") is an investor in and owner of various residential real estate mortgages throughout the United States. Upon belief, Freddie Mac maintains agreements with various mortgage servicers across the United States to service their loans including Defendants.

7.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as this action primarily arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA) and the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. §§ 2601, *et seq*.

8.      This action is specifically filed to enforce regulations promulgated by the Consumer Finance Protection Bureau (CFPB) that became effective on January 10, 2014, specifically, 12 C.F.R. §§ 1024.35, *et seq*., of Regulation X..

9.      This Court has supplemental jurisdiction to hear any and all state law claims pursuant to 28 U.S.C. §1367.

1

## INTRODUCTION

10.     Borrowers restate and incorporate herein all of their statements and allegations contained in the paragraphs one (1) through nine (9) in their entirety, as if fully rewritten.

11.     In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

12.     Specifically, on January 17, 2013, the CFPB issued RESPA Mortgage Servicing Final Rules (Regulation X) 78 F.R. 10695 (February 14, 2013), which became effective on January 10, 2014.

13.     The Loan in the instant matter is a "federally related mortgage loan" as said term is defined by 12 C.F.R. § 1024.2(b).

14.     M&T and Bayview are subject to the aforesaid Regulations and does not qualify for the exception for "small servicers", as such term is defined in 12 C.F.R. §1026.41(e)(4), nor does M&T qualify for the exemption for a "qualified lender", as such term is defined in 12 C.F.R. § 617.700.

15.     Borrowers are asserting claims for relief against M&T and Bayview for breaches of specific rules under Regulation X, as set forth, *infra*.

16.     Borrowers have a private right of action under RESPA pursuant to 12 U.S.C. § 2605(f) for the claimed breaches of Regulation X and such action provides for remedies including actual damages, costs, statutory damages, and attorneys' fees.

17.     Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as Borrowers maintain the Home as their primary residence within this District and the events giving rise to the claims asserted herein occurred in this District.

## STATEMENT OF FACTS

## THE MODIFICATION AND ISSUES WITH THE BORROWERS' INITIAL PAYMENTS

18.     Borrowers restate and incorporate herein all of their statements and allegations contained in the paragraphs one (1) through seventeen (17) in their entirety, as if fully rewritten.

19.     Borrowers used their life savings and purchased their Home, the subject property in this cause of action. The Home was a new construction and Borrowers worked with the builder and developer to personally choose each detail of the Home.

20.     Several years later, Borrowers went through a financial hardship due to health and employment related issues.

21.     Upon experiencing the hardship, Borrowers proactively contacted Chase, their lender and servicer at the time, to request assistance.

22.     Chase advised Borrowers that they could not seek assistance until they had missed three mortgage payments. In reliance on Chase's instructions, Borrowers missed two (2) of their mortgage payments.

23.     The idea of missing payments was not appealing to Borrowers, however, who had the practice of making all payments early or on-time. Borrowers decided they could not wait until missing their third payment and contacted Chase to request the assistance process begin

promptly. Thereafter, Borrower went through many months of seeking assistance to no avail. Finally, due to fear, frustration and desperation, Borrowers retained foreclosure defense counsel.

24.     Borrowers qualified for and were approved for a HAMP Modification, but Chase never notified Borrowers of the approval for the requested modification.

25.     Borrowers subsequently went through two (2) years of foreclosure litigation until the Loan was transferred.

26.     When servicing of the loan transferred effective February 15, 2014, Borrowers learned through foreclosure counsel that Bayview was willing to consider a loss mitigation application for a modification of the mortgage loan.

27.     Borrowers applied and were approved for a trial payment plan and  Borrowers entered into a Trial Modification Agreement with Bayview (the "TPP").

28.     Pursuant to the terms of the TPP, Borrowers were to make three (3) trial period monthly payments on September 1, 2014, October 1, 2014 and November 1, 2014..

29.     Borrowers fully performed their obligations under the TPP.

30.     On or about November 13, 2014, Bayview sent correspondence to Borrowers stating that Borrowers were approved for a permanent modification, specifically a "Home Affordable Modification Agreement" (the "Approval"). A copy of the Approval is attached as *Exhibit A*.

31.     Borrowers were eager to begin rebuilding their credit and make payments again for the beloved Home.

4

32.    Following the instructions contained within the Approval, Borrowers executed the modification documents on November 19, 2014 and returned the same to Bayview.  A copy of the fully executed modification (the "Modification") is attached as *Exhibit B*.[1]

33.    The effective date of the Modification was December 1, 2014 and the principal terms of the Modification are outlined as follows:

a.   Interest Rate:  2.000% for the first five (5) years, 3.000% for the sixth year, and 4.000% for the remainder of the term

b.   New Principal Balance:  $560,068.11

c.   Deferred Principal Balance:  $39,000.00

d.   Interest Bearing Principal Balance:  $521,068.11

e.   First Modified Payment Due Date:  December 1, 2014

f.   Number of Monthly Payments: 480

g.   Monthly Principal and Interest Payment: $1,577.93 for the first five years, $1,833.18 for the sixth year, and $2,102.62 for the remainder of the term

h.   Estimated Monthly Escrow Payment: $588.38, adjusting periodically in accordance with applicable law

i.   Total Initial Monthly Payment:  $2,166.31

See *Exhibit B*.

34.    Further, the Modification explicitly states:

The modified principal balance of [my] Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late

---

[1] Bayview, for reasons unknown, waited to countersign the Modification until March 23, 2016.

charges, collectively "Unpaid Amounts") less any amounts paid to
the Lender but not previously credited to my Loan."

See *Exhibit B*.

35.     Pursuant to the Approval, the finalization of the modification process or transition period would take approximately ninety (90) days. The monthly payment of principal interest and escrow would not be determined until the completion of the modification process/transition period.  See *Exhibit A*.

36.     Borrowers were to make the delineated payments in the amount of $2,166.31 on December 1, 2014 and to continue paying the same amount each month until they received a new statement reflecting changes to the payment amount.  See *Exhibit A*.

37.     Defendants failed to send statements to Borrowers for the months of December 2014 and January 2015.

38.     Borrowers timely made the required payments pursuant to the Approval and Modification on or before the due dates for the months of December 2014, January 2015, February 2015, and March 2015.

39.     Borrowers received the first post-Modification statement on from M&T after March 1, 2015.  The "First Modified Mortgage Statement" stated it was for the "Payment Due Date" of February 1, 2015 but it was not issued until February 24, 2015 (twenty-three (23) days after the payment was due). A copy of the First Modified Mortgage Statement is attached as *Exhibit C*.

40.     The First Modified Mortgage Statement claimed:

        a.   The amount due February was $4,378.14

        b.   The escrow balance for the Loan was $-843.72;

6

     c.    Borrowers' monthly escrow payment was $611.14;

     d.    Borrowers' Suspense Balance was $2,120.79;

     e.    Borrowers were as past due one (1) payment of $2,189.07;

     f.    Borrowers were being charged "Total Charges" in addition to the monthly payments due in the amount of $2,189.07.

.See *Exhibit C*.

41.     On or about March 1, 2015, Borrowers' also received an "Annual Escrow Disclosure Statement" which curiously included a statement of the "New Payment Effective 12/01/2014" (eighty-three (83) days after the alleged New Payment Effective date). A copy of the Annual Escrow Account Disclosure Statement is attached as *Exhibit D*.

42.     Specifically, the Escrow Disclosure Statement claimed:

     a.    The New Payment Effective 12/01/2014 was $2,189.07;

     b.    The escrow "Starting Balance" of the escrow account for the loan was was -$2066.00;

     c.    Borrowers' monthly escrow payment was $567.25;

     d.    Borrowers' "Prorated Escrow Shortage" was $43.89.

See *Exhibit D*.

43.     Despite making payments as instructed in the Approval and Modification, M&T began sending Borrowers Mortgage Statements which stated Borrowers were late and delinquent with their mortgage payment in error due to M&T's improper retroactive application of the change in payment terms.

44.     On February 25, 2015 one (1) day after issuing the Mortgage Statement for the February 1, 2015 payment), M&T processed Borrowers' payment received on February 15, 2015 as a Partial Payment Received in the amount of $2,166.31 and issued the Mortgage Statement for March 1, 2015. M&T erroneously applied the payment sent by Borrowers on February 15, 2015 that was intended for, and should have been applied for, the payment due March 1, 2015 to the the payment due February 1, 2015 payment. A copy of the March 1, 2015 Mortgage Statement is attached as *Exhibit E*.

45.     Upon receiving the confusing and erroneous statements, Borrowers were troubled, anxious and confused.

46.     After reviewing of the statements, Borrowers referred back to the Approval Letter and determined that they were now required to pay the increased payment amount of $2,189.07 based on receiving a statement informing them of the increase. As such, Borrowers began paying the new amount starting with the next monthly payment due.

## BORROWERS' ATTEMPTS TO PROACTIVELY CORRECT SERVICING ERRORS

47.     Due to fear and concern that something was wrong with their Modification, Borrowers retained Attorney Jessica L. Kerr ("Counsel") to assist them in resolving the erroneous accounting by M&T and Bayview.

48.     With the assistance of counsel, Borrowers sent correspondence to M&T in April 2015 alleging that M&T committed errors in the servicing of the Loan by failing to properly apply the Borrowers' payments and by failing to send mortgage statements until the First Modified Mortgage Statement ("NOE #1").

49.     Borrowers sent NOE #1 to M&T at their address designated pursuant to 12 C.F.R. § 1024.35(c) and M&T received the same.

50.     While admitting in response to NOE #1 ("Response to NOE #1") that it failed to begin generating mortgage statements until March 3, 2015, M&T failed to correct, acknowledge, or even reference the errors related to the Loan's accounting and instead erroneously continued to consider the Borrowers delinquent despite their timely payments. A copy of Response to NOE #1 sent by M&T on May 29, 2015 is attached hereto as *Exhibit F*.

51.     Borrowers continued to make their monthly payments on time, however M&T continued to send statements claiming the Borrowers were delinquent. A copy of the respective statements for the respective time period are attached hereto as *Composite Exhibit G*.

52.     With the assistance of counsel, Borrowers sent another notice of error to M&T and Bayview on July 15, 2015 ("NOE #2") identifying the payments that had not been properly applied to the Loan and demanding that Defendants correct the accounting errors, credit the erroneous late charges and correct the wrongful credit reporting. A copy of NOE#2 is attached hereto as *Exhibit H*.

53.     Borrowers sent NOE #2 to M&T and Bayview at their respective self-designated addresses for the receipt of notices of error pursuant to 12 C.F.R. § 1024.35(c) and Defendants each received the same at such addresses.

54.     Bayview acknowledged receipt of NOE #2 on behalf of Defendants via correspondence dated July 24, 2015. ("Acknowledgment of NOE #2").. A copy of Acknowledgment of NOE #2 is attached hereto as *Exhibit I*.

55.     On August 21, 2015, Bayview sent a letter advising Borrowers that the errors noticed by and through NOE #2 were in the process of being corrected and that, once completed, the "loan will be reported current" ("Response to NOE #2"). A copy of Response to NOE #2 is attached hereto as *Exhibit J*.

56.     Rather than actually correcting the errors as Defendants assured Borrowers they would in Response to NOE #2, M&T continued to claim Borrowers were behind in payments by sending notices advising that they were holding payments made by the Borrowers in suspense continuing in their erroneous actions and and causing Borrowers' greater distress. See a copy of the "Suspense Funds Notice" dated August 28, 2015 attached hereto as *Exhibit K*.

57.     Accordingly, on or about September 9, 2015, with the assistance of counsel, Borrowers sent a third Notice of Error to M&T alleging that M &T committed an error by failing to correct the errors raised in NOE #1 and NOE #2, which Bayview admitted had occurred ("NOE #3"). Additionally, Borrowers notified M&T of additional errors including wrongful late charges included on Borrowers' August 1, 2015 Mortgage Statement, erroneous accounting, and false credit reporting. Borrowers also notified M&T of the emotional and physical stress the situation Borrowers were experiencing as a result of the pattern and practice by M&T of failing to properly credit payments, charging erroneous late fees, and improperly reporting their payments to credit agencies. A copy of NOE #3 is attached hereto as *Exhibit L*.

58.     Borrowers sent NOE #3 to M&T via Certified U.S. Mail [Receipt No. 7015 1520 0000 0946 4572] at their self-designated addresses for the receipt of notices of error pursuant to 12 C.F.R. § 1024.35(c) and M&T received the same at such address.

59.      Bayview, acting on behalf of M&T, acknowledged and responded to NOE #3 and again advised Borrowers that any late fees were being credited and that the errors were being corrected, but erroneously stated that Borrowers' loan was due for September 1, 2015, rather than for October 1, 2015. A copy of Bayview's response to NOE #3 is attached hereto as *Exhibit M*.

60.      On or about September 18, 2015 M&T further responded to #3 acknowledging receipt of NOE #3, but also erroneously advising them that they were delinquent and needed to send in proof of payment in order to resolve the error. A copy of M&T's Acknowledgment is attached hereto as *Exhibit N*.

61.      On or about September 25, 2015, Borrowers spoke with representatives of M&T by telephone to resolve the accounting error on their Loan, explaining that they were current with their monthly mortgage statements.  Instead of investigating Borrowers' claims at that time, M&T entered a note in the Loan Activity Collection Contacts ("Collection Notes") stating that the Borrowers' payment for September 2015 payment was applied to the payment due for August 2015. A copy of the relevant portion of the Collection Notes is attached as *Exhibit O*.

62.      On October 9, 2015, M&T sent correspondence in further response to NOE #3, advising the Borrowers that the late fees had been waived and provided an accounting of the recent payments received. Unfortunately, M&T again failed to correct the accounting errors. M&T further informed Borrowers that they would have to call M&T in order to have the payments processed properly for the October 1, 2015 payment. A copy of said correspondence is attached hereto as *Exhibit* P.

63.     Despite Borrowers' best efforts to resolve the servicing error through the error resolution process afforded by Regulation X, Defendants failed to acknowledge and correct the accounting errors on the Loan.

64.     Borrowers were distressed by the servicer's failure to correct the errors and retained the services of New Regs Research Group, LLC ("NRRG").

65.     On or about November 3, 2015, Borrowers, by and through NRRG, sent correspondence to M&T captioned or otherwise titled "Request for Information" ("RFI #1"). A copy of RFI #1 is attached as *Exhibit Q*.

66.     Borrowers sent RFI #1 to M&T via Certified U.S. Mail [Receipt No. 7015 0640 0002 6882 9316] at their self-designated addresses for the receipt of requests for information pursuant to 12 C.F.R. § 1024.36(b) and M&T received the same at such address. See *Exhibit Q*.

67.     By and through RFI #1, Borrowers requested the identity of the owner or investor of the Loan as well as:

  a. Copies of any and all notices or disclosures for any mortgage servicing transfers.

  b. Copies of any and all notices of the mortgage loan sale also known as, ownership transfers for the referenced loan to any Creditor, Investor or Owner.

  c. A list of all loss mitigation options the investor or assignee participates in.

  d. A list of any loss mitigation options the investor participates in as a result of any government and or investor settlement such as the Department of Justice settlement.

See *Exhibit Q*.

68.     On or about November 3, 2015, Borrowers, by and through NRRG, sent correspondence to M&T captioned or otherwise titled "Request for Information" ("RFI #2"). A copy of RFI #2 is attached as *Exhibit R*.

69.     Borrowers sent RFI #2 to M&T via Certified U.S. Mail [Receipt No. 7015 0640 0002 6862 9323] at their self-designated addresses for the receipt of requests for information pursuant to 12 C.F.R. § 1024.36(b) and M&T received the same at such address. See *Exhibit R*.

70.     By and through RFI #2, Borrowers requested information regarding:

   a.   A full and complete copy and or statement of any premiums and or fees assess to the above referenced mortgage loan account for any forced-place insurance;

   b.   A copy of the current insurance policy; and,

   c.   Any call notes and or call logs related to communication with the borrower about the above referenced mortgage loan;

   d.   A record of all property taxes that have been paid by Servicer and the next due date for property taxes due to prevent and or avoid the borrower from being delinquent.

See *Exhibit R*.

71.     On or about November 3, 2015, Borrowers, by and through NRRG, sent correspondence to M&T captioned or otherwise titled "Request for Information" ("RFI #3"). A copy of RFI #3 is attached as *Exhibit S*.

13

72.     Borrowers sent RFI #3 to M&T via Certified U.S. Mail [Receipt No. 7015 0640 0002 6882 9330] at their self-designated addresses for the receipt of requests for information pursuant to 12 C.F.R. § 1024.36(b) and M&T received the same at such address. See *Exhibit S.*

73.     By and through RFI #3, Borrowers requested:

    a.   A payoff statement for the Loan;

    b.   A copy of the most recent periodic mortgage statement for the Loan;

    c.   A list of which credit bureaus have been notified about the Loan and information associated with such reporting events.

See *Exhibit S.*

74.     On or about November 11, 2015, Borrowers, by and through NRRG, sent correspondence to M&T captioned or otherwise titled "Request for Information/Notice of Error" ("NOE #4"). A copy of NOE #4 is attached as *Exhibit T.*

75.     Borrowers sent NOE #4 to M&T at their self-designated address for the receipt of notices of error pursuant to 12 C.F.R. § 1024.35(c) and M&T received the same at such address. See *Exhibit T.*

76.     By and through NOE #4, Borrowers, provided notice that M&T committed errors regarding the Loan when it again charged a late fee on the October 29, 2015 Mortgage Statement.  Borrowers further requested M&T explain why the error continues to occur. See *Exhibit T.*

77.     On or about November 16, 2015, Borrowers, by and through NRRG, sent correspondence to M&T captioned or otherwise titled "Notice of Error/Request for Information ID# DF1116E" ("NOE #5"). A copy of NOE #5 is attached as *Exhibit U.*

14

78.     Borrowers sent NOE #5 to M&T at their self-designated address for the receipt of notices of error pursuant to 12 C.F.R. § 1024.35(c) and M&T received the same at such address. See *Exhibit U*.

79.     By and through NOE #5, Borrowers, gave notice that M&T committed errors when it failed to acknowledge RFI #1, RFI #2, and RFI #3 (collectively, the "NRRG RFIs") pursuant to 12 C.F.R. § 1024.36(c) within five (5) business days of M&T's receipt of the same on or about Friday, November 6, 2015. See *Exhibit U*.

80.     On or about November 24, 2015, Borrowers, by and through NRRG, sent correspondence to M&T captioned or otherwise titled "Notice of Error ID# DF1124E1" ("NOE #6"). A copy of NOE #6 is attached as *Exhibit V*.

81.     Borrowers sent NOE #6 to M&T at their self-designated address for the receipt of notices of error pursuant to 12 C.F.R. § 1024.35(c) and M&T received the same at such address. See *Exhibit V*.

82.     By and through NOE #6, Borrowers alleged that M&T committed an error in the servicing of the Loan by sending the Mortgage Statement dated November 16, 2015 which included improper late charges, incorrect fees, and an incorrect amount due and owing of $4,550.94 . See *Exhibit V*.

83.     By and through NOE #6, Borrowers also requested that M&T communicate with NRRG directly and cease communication with the Borrowers directly.

84.     On or about November 28, 2015, NRRG received correspondence from M&T acknowledging receipt of the NRRG RFIs (the "NRRG RFI Acknowledgment"). A copy of the NRRG RFI Acknowledgment is attached as *Exhibit W*.

15

85.     The NRRG RFI Acknowledgment is dated November 5, 2015[2] includes seven (7) enumerated enclosures in response to the NRRG RFIs.

86.     On December 1, 2015, Borrowers by and through NRRG sent correspondence to M&T captioned or otherwise titled "Notice of Error ID# DF1201E" ("NOE #7). A copy of NOE #7 is attached as *Exhibit X.*

87.     Borrowers sent NOE #7 to M&T at their self-designated address for the receipt of notices of error pursuant to 12 C.F.R. § 1024.35(c) and M&T received the same at such address. See *Exhibit X.*

88.     By and through NOE #7, Borrowers provided notice of M&T's continued failure to correct their errors stating that although the Borrowers continued to pay their monthly mortgage payments on time, M&T charged three (3) separate additional wrongful late fees in August, September and October of 2015. Borrowers again reminded M&T that communication should be made directly to NRRG as their agent. See *Exhibit X.*

89.     Despite reviewing the dispute as outlined by Borrowers and NRRG, M&T refused to correct the errors.

90.     As the efforts of Borrowers and NRRG to have M&T correct their errors in the servicing of the Loan had been unsuccessful, Counsel formally stepped in to assist with the error resolution process. While Counsel assisted Borrower throughout the error resolution process, Counsel did not communicate directly with M&T prior to this point.

91.     On or about February 5, 2016, Borrowers, by and through Counsel, sent correspondence to M&T via Certified Mail pursuant to the Fair Credit Reporting Act ("FCRA")

---

[2] The date of the letter appears to be an error because M&T did not receive the November 3, 2015 RFI's until November 6, 2015.

advising M&T of the accounting errors and requesting that M&T's false credit reporting of Borrowers as late be corrected. The FCRA Letter included Counsel contact information in the letterhead and third party authorization. A redacted copy of "FCRA Letter" is attached as *Exhibit Y.*

92.     M&T sent correspondence dated February 26, 2016 acknowledging receipt of FRCA Letter (the "Acknowledgment of FCRA Letter"). Therein, M&T stated that it correct the credit reporting for the months of December 2014, January 2015 and February 2015. However, M&T failed to correct the reporting for December 2014 and failed to report Borrower's payments for the October 2014. A copy of the Acknowledgment of FCRA Letter is attached as *Exhibit Z.*

93.     On March 25, 2016, M&T sent subsequent correspondence to Counsel to contact M&T at the "1-800" number provided. The Acknowledgment further warned that if Counsel failed to do so within ten (10) business days, M&T would instead communicate with the Borrowers directly. Counsel attempted to contact M&T at the number provided but was unable to connect to a person at M&T through their automated system.

94.     In response to the Acknowledgment of FCRA Letter, Counsel sent correspondence captioned "Notice of Error" ("NOE #8") on March 28, 2016. A copy of March 25, 2016 correspondence and NOE # 8 are attached as *Composite Exhibit AA.*

95.     Borrowers sent NOE #8 to M&T at their self-designated address for the receipt of notices of error pursuant to 12 C.F.R. § 1024.35(c) and M&T received the same at such address. See *Exhibit AA.*

96.     By and through NOE #8 Borrowers through counsel advised M&T that M&T committed an error by requiring Counsel to call M&T in order for M&T to honor the Borrowers' representation by counsel. See *Exhibit AA*.

97.     In response to NOE #8, M&T misrepresented stating that it did not instruct Counsel that it must call M&T, and that the Notice of Error was sufficient confirmation of representation by counsel.

98.     On or about May 31, 2016, Counsel sent correspondence to M&T captioned "NOTICE OF ERROR/REQUEST FOR INFORMATION/PRESUIT DEMAND" in yet another attempt to have M&T correct their servicing errors and wrongful accounting to properly reflects that Borrowers had in fact made all payments on time since the effective date of the Modification. A copy of the Notice of Error with proof of mailing is attached ("NOE # 9") is attached as *Exhibit BB*.

99.     Borrowers sent NOE #9 to M&T at their self-designated address for the receipt of notices of error pursuant to 12 C.F.R. § 1024.35(c) and M&T received the same at such address. See *Exhibit BB*.

100.    By and through NOE #9, Borrowers through counsel notified M&T of eight (8) repeated errors M&T committed repeatedly each month since the effective date of the Modification. See *Exhibit BB*.

101.    Shockingly, despite acknowledging representation by counsel and receipt of NOE #9 from counsel, M&T posted a notice on the Borrowers' front door warning of foreclosure lawsuit due to Borrowers' delinquency.

102.    Finally, on August 1, 2016, Defendants each provided a response to NOE #9. A copy of M&T's response is attached here as *Exhibit CC*. A copy of Bayview's Response is attached hereto as *Exhibit DD*.

103.    Largely, M&T stated that Borrowers' notice was duplicative and that M&T had already corrected the majority of the errors raised, but finally, after Borrowers sent nine (9) notices of error over the course of eighteen (18) months, M&T finally acknowledged their accounting errors and corrected the same from 2015 and notified the credit reporting agencies to correct the reporting for that time frame. See *Exhibit CC*.

104.    M&T and Bayview never provided any indication as to why it was only upon the receipt of NOE #9 that M&T finally corrected the accounting and credit reporting errors.

105.    M&T, however, declined to mitigate its damages and it forced  Borrowers to incur costs and fees submitting nine (9) Notices of Error before M&T corrected the accounting and reporting for Borrowers account. See *Exhibit CC*.

106.    Although it finally appeared that M&T had corrected the accounting on Borrowers' Loan, much to Borrowers' dismay, beginning in or around March 2017, M&T began to commit the same errors once again, which have not been corrected to date.

107.    Specifically, Despite the fact that all payment on the loan had been made in a timely manner, M&T issued a Mortgage Statement on March 6, 2017 alleging Borrowers were delinquent for their March 1, 2017 payment.  Additionally, M&T erroneously failed to apply a full payment in the amount of $2,167.62 as required by Regulation X. Instead, M&T considered the payment a partial payment due to illegal pyramiding of late fees. Notably, Borrowers were not late with their mortgage payments and continued as always to make correct and timely

monthly mortgage payments. A copy of the March 2017 Mortgage Statement is attached hereto as *Exhibit EE*.

108.   Accordingly, on or about April 4, 2017, by and through Counsel, Borrowers sent another notice of error to Defendants wherein each and every payment issued by Borrowers to M&T was delineated to assist Defendants' in correcting the alleged errors which included improper accounting and charging improper late fees ("NOE #10"). A copy of NOE #10 is attached hereto as *Exhibit FF*.

109.   Borrowers sent NOE #10 to Defendants at their respective self-designated addresses for the receipt of notices of error pursuant to 12 C.F.R. § 1024.35(c) and Defendants each received the same at such addresses. See *Exhibit FF*.

110.   Despite the extensive detail provided, M&T failed to correct the error and incorrectly stated that Borrowers failed to make the monthly payments for January 1, 2016, April 1, 2016 and January 1, 2017 ("Response to NOE #10").  A copy of Response to NOE #10 is attached hereto as *Exhibit GG*.

111.   Borrowers did not fail to remit funds to satisfy their payment obligations for the months of January 2016, April 2016, or January 2017. Copies of the allegedly missed payments are attached hereto as *Composite Exhibit HH*.

112.   On or about August 25, 2017, in a final effort to assist M&T and Bayview into correcting their errors in the servicing of the Loan, Borrowers sent an eleventh notice of error to Defendants ("NOE #11"). A copy of NOE #11 is attached as *Exhibit II*.

113.    Borrowers sent NOE #11 to Defendants at their respective self-designated addresses for the receipt of notices of error pursuant to 12 C.F.R. § 1024.35(c) and Defendants each received the same at such addresses. See *Exhibit II*.

114.    Borrowers, by and through NOE #11, provided notice that Defendants committed no less than sixteen (16) errors in their servicing of the Loan including failing to send monthly statements, failing to credit payments, and charging erroneous late fees. See *Exhibit II*.

115.    Bayview acknowledge receipt of NOE #11 and advised that a response was expected on October 9, 2017. See Bayview's acknowledgement attached as *Exhibit JJ*.

116.    On October 10, 2017 responded advising that M&T would provide a substantive response under separate cover. Bayview further referred Borrowers to Bayview's Response from June 27, 2017. See Bayview's Response attached as *Exhibit KK*.

117.    Borrowers have yet to receive a response to NOE #11 from M&T.

118.    To date, M&T has failed to correct the errors

119.    Defendants' improper actions have caused Borrowers significant and wholly unwarranted harm to their credit.

120.    Borrowers were denied credit and financing on numerous occasions as a direct and proximate result of Defendants' errors in the servicing of the Loan and the resulting false credit reporting arising therefrom. In particular, Borrowers were denied credit when they sought financing for home repairs, auto refinancing, personal credit applications.

121.    Specifically, in June of 2015 Borrower Donna Finkel attempted to obtain financing from her bank, Bank of America, with whom she had a longstanding relationship.

However, she was denied due to the negative credit reporting by Servicers.  A copy of the denial letter is attached as *Exhibit JJ*.

122.    Additionally,  Borrowers sought credit to finance repairs for their home, but were denied due to their diminished credit score as a result Defendants' servicing errors.  A copy of the various companies to which Borrowers applied and were denied is attached as Composite *Exhibit KK*.

123.    Borrowers have further suffered severe emotional distress due to the prolonged mortgage servicing abuses. Specifically, Plaintiff John Civetti, experienced exasperation of his Crohn's disease, a condition instigated and worsened by stress. Plaintiff, Donna Finkel experienced sleep loss, hair loss and anxiety for which she sought medical care.

124.    Borrowers have incurred fees and expenses in hiring professionals help to attempt to have M&T and Bayview correct their errors in servicing the Loan including, but not limited to mailing costs, fees paid to  NRRG and to Counsel, after Borrowers made reasonable attempts on their own to have M&T correct such errors.

125.    Borrowers have incurred costs and expenses in the sending the NRRG RFIs as well as NOE #1 through NOE# 11 *via* Certified Mail.

126.    M&T's and Bayview's wrongful and willful actions have caused Borrowers to suffer frustration and emotional distress driven by the fear that M&T's and Bayview's actions might lead to default and the foreclosure of the Home, which has resulted in loss of sleep, anxiety, depression, embarrassment, and other persistent emotional distress.

127.    Throughout this entire ordeal, Borrowers have merely wanted M&T and Bayview to honor the Modification that they entered into with Bayview and to properly apply their

mortgage payments so that they could cure any delinquency on the Loan, avoid any potential foreclosure, and resume making timely, proper payments on the Loan to M&T in order to begin to rehabilitate their credit, and most importantly, remain in their Home.

128.    M&T's and Bayview's actions are part of a pattern and practice of behavior in violation of Borrowers' rights and in abdication and contravention of M&T's and Bayview's obligations under the mortgage servicing regulations set forth in Regulation X of RESPA.

129.    At the time of the filing of this Complaint, M&T has had more than Eight Hundred Forty (840) consumer complaints lodged against it nationally, specifically concerning the issue identified on the CFPB's consumer complaint database as "loan modification, collection, foreclosure" related to mortgages and more than Seven Hundred Ninety (790) such complaints concerning the issue identified as "loan servicing, payments, escrow account". Each such complaint is filed and cataloged in the CFPB's publicly accessible online database. (http://www.consumerfinance.gov/complaint database/).

130.    At the time of the filing of this Complaint, Bayview has had more than Nine Hundred (900) consumer complaints lodged against it nationally, specifically concerning the issue identified on the CFPB's consumer complaint database as "loan modification, collection, foreclosure" related to mortgages and more than Seven Hundred Forty (740) such complaints concerning the issue identified as "loan servicing, payments, escrow account". Each such complaint is filed and cataloged in the CFPB's publicly accessible online database. (http://www.consumerfinance.gov/complaint database/).

## COUNT ONE: AGAINST M&T AND BAYVIEW
## VIOLATIONS OF 12 C.F.R. § 1024.35

**[Failure to properly respond to NOE #2, NOE #3, NOE #10, NOE #11]**

131.    Borrowers restate and incorporate herein all of their statements and allegations contained in the paragraphs one (1) through one hundred twenty-seven (130) in their entirety, as if fully rewritten.

132.    12 C.F.R. § 1024.35(a) provides that a "servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred."

133.    Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower.

134.    12 C.F.R. § 1024.35(e)(1) provides that a servicer must respond to a notice of error by either "[c]orrecting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance" or "[c]onducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance."

135.    NOE #2, NOE #3, NOE #10, and NOE #11 each meet the requirements of a notice of error as defined by 12 C.F.R. § 1024.35(a). See *Exhibits H, L, FF,* and *II.*

136.    Borrowers sent NOE #2, NOE #10, and NOE #11 to Defendants at their respective self-designated addresses for the receipt of notices of error pursuant to 12 C.F.R. § 1024.35(c) and Defendants received each of the same at such addresses. See *Exhibits H, FF,* and *II.*

137.    Borrowers sent NOE #3 to M&T at their respective self-designated address for the receipt of notices of error pursuant to 12 C.F.R. § 1024.35(c) and M&T received the same at such address. See *Exhibit L.*

138.    Defendants failed to properly respond to NOE #2, NOE #3, NOE #10, and NOE #11 for various reasons and committed a violation of 12 C.F.R. § 1024.35 for each such notice of error to which Defendants failed to properly respond.

139.    Bayview responded to NOE #2 on behalf of themselves and M&T via Response to NOE #2, which stated that process of being corrected and that, once completed, the "loan will be reported current". See *Exhibit J.*

140.    While Response to NOE #2 did admit that an error occurred, Bayview failed to actually correct the errors, despite their assurances to the contrary, and state the date of the correction rendering Response to NOE #2 insufficient to comply with the requirements of 12 C.F.R. § 1024.35(e)(1)(A).

141.    Bayview, acting on behalf of M&T, responded to NOE #3 and again advised Borrowers that any late fees were being credited and that such errors were being corrected, but erroneously stated that Borrowers' loan was due for September 1, 2015, rather than for October 1, 2015. See *Exhibit M.*

25

142.    By and through Defendants' responses to NOE #9, Defendants admitted that they committed errors in regards to the Loan by incorrectly deeming the Borrowers to be delinquent in their obligations. See *Exhibits CC* and *DD*.

143.    Bayview's response to NOE #3 fails to comply with 12 C.F.R. § 1024.35(e)(1)(A) as not all errors were corrected, namely the incorrect due date for the Borrowers' payment. See *Exhibit M*.

144.    Bayview's response to NOE #3 fails to comply with 12 C.F.R. § 1024.35(e)(1)(B) as Bayview clearly did not perform a reasonable investigation into the noticed error claiming that the Borrowers' loan was wrongfully in a delinquent status. Had Bayview conducted a reasonable investigation, Bayview would have readily determined that the Borrowers had been in full compliance with their obligations under the Loan and that the Loan was due for the October 1, 2015 payment, not the September 1, 2015 payment. See *Exhibit M*.

145.    Response to NOE #10 is insufficient to comply with 12 C.F.R. § 1024.35(e)(1)(A) as M&T did not admit that any errors occurred. See *Exhibit GG*.

146.    It is clear that neither Bayview nor M&T performed a reasonable investigation into the errors alleged by and through NOE #10 before claiming that no errors occurred by and through Response to NOE #10 as the findings of such directly contradict and undo the analysis and reasoning resulting in the short-lived corrections in response to NOE #9. Had M&T performed a reasonable investigation into the errors alleged by and through NOE #10, they would have readily discovered that the account was being erroneously deemed delinquent despite the previous corrections.  See *Exhibit GG*.

147.    To date Bayview and M&T have failed to respond to NOE #11.

148.    In failing to properly respond to NOE #2, NOE #3, NOE #10, and NOE #11, M&T and Bayview committed a separate and distinct violation of 12 C.F.R. § 1024.35 for each such notice of error to which they failed to properly respond.

149.    Defendants' actions are part of a pattern and practice of behavior in conscious disregard for Borrowers' rights and Defendants' obligations pursuant to Regulation X.

150.    As a direct and proximate result of Defendants' actions, Borrowers have suffered actual damages including but not limited to incurring legal fees to retain Counsel to continuously assist in bringing Defendants' errors to their attention and ultimately to prepare, file, and prosecute this case to remedy Defendants' wrongful conduct. Moreover,  but-for Defendants' failure to reasonably investigation and properly and permanently correct the errors alleged by and through the notices of error, Borrowers would not have had to send follow-up notices of error and incur fees, costs, and expenses in preparing and mailing the same by and through Certified U.S. Mail. For example, but-for Defendants' failure to properly respond to NOE #10, Borrowers would not have had to prepare and send NOE #11, with the same pattern repeating for prior notice of error..

151.    As a result of Defendants' actions, Borrowers have suffered, and continue to suffer, significant damages including other legal expenses, other economic loss, as well as anxiety, loss of sleep, and emotional and mental distress as further outlined, *supra*.

152.    As a result of Defendants' actions, Defendants are liable to Borrowers for actual damages, statutory damages costs, and attorneys' fees.

**COUNT TWO: AGAINST M&T**
**VIOLATIONS OF 12 C.F.R. § 1024.35**

**[Failure to properly respond to NOE #1, NOE #4, NOE #5, NOE #6, and NOE #7]**

27

153.    Borrowers restate and incorporate herein all of their statements and allegations contained in the paragraphs one (1) through one hundred twenty-seven (130) in their entirety, as if fully rewritten.

154.    12 C.F.R. § 1024.35(a) provides that a "servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred."

155.    Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower.

156.    12 C.F.R. § 1024.35(e)(1) provides that a servicer must respond to a notice of error by either "[c]orrecting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance" or "[c]onducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance."

157.    NOE #1, NOE #4, NOE #5, NOE #6, and NOE #7 each meet the requirements of a notice of error as defined by 12 C.F.R. § 1024.35(a). See *Exhibits T, U, V, and X.*

158.     Borrowers sent NOE #1, NOE #4, NOE #5, NOE #6, and NOE #7, to M&T at their respective self-designated addresses for the receipt of notices of error pursuant to 12 C.F.R. § 1024.35(c) and M&T received each of the same at such addresses. See *Exhibits T, U, V,* and *X.*

159.     M&T failed to properly respond to NOE #1, NOE #4, NOE #5, NOE #6, and NOE #7 for various reasons and committed a violation of 12 C.F.R. § 1024.35 for each such notice of error to which Defendants failed to properly respond.

160.     Response to NOE #1 is insufficient to comply with 12 C.F.R. § 1024.35(e)(1)(A) in regards to the alleged errors concerning the misapplication of mortgage payments as M&T did not admit that any such errors occurred, only admitting their failure to send mortgage statements. See *Exhibit F.*

161.     Response to NOE #1 is insufficient to comply with 12 C.F.R. § 1024.35(e)(1)(B) in regards to the alleged errors concerning the misapplication of mortgage payments as M&T did not make any reference to these in Response to NOE #1 whatsoever. See *Exhibit F.*

162.     It is clear that M&T did not perform a reasonable investigation into the errors alleged by and through NOE #1 as had M&T conducted a reasonable investigation, M&T would have readily determined that the Borrowers had been in full compliance with their obligations under the Loan and that payments had been misapplied as Defendants agreed in response to NOE #9 .See *Exhibit CC* and *DD.*

163.     But-for M&T's failure to properly respond to NOE #1, Borrowers would not have had to incur costs and expenses to prepare and send any subsequent notices of error in an attempt to have M&T correct their servicing errors.

29

164.   NOE #5 alleged that M&T committed errors in the servicing of the Loan by failing to send written notice acknowledging receipt of the NRRG RFIs within five (5) business days of receipt thereof in violation of 12 C.F.R. § 1024.36(c). See *Exhibit T*.

165.   NRRG received the NRRG RFI Acknowledgment on or about November 28, 2015 which in essence corrected the errors alleged by and through NOE #5, but M&T did not send written notice admitting an error occurred and the effective date of the correction or alternatively, stating that no error occurred. See *Exhibit W*.

166.   M&T failed to send any written notice in response to NOE #5 that complied with the express requirements of 12 C.F.R. §§ 1024.35(e)(1)(A) or (e)(1)(B).

167.   NOE #4, NOE #6, and NOE #7 each alleged that M&T committed errors in the servicing of the Loan by continually claiming that the Borrowers were delinquent in their obligations under the Loan by claiming they were at least one (1) month in arrears and by subsequently imposing late fees and other charges against the Loan.  See *Exhibits T*, *V*, and *X*.

168.   M&T failed to send written notice in response to NOE #4, NOE #6, and NOE #7, admitting that all of the errors occurred, correcting such errors, and stating the effective date of the corrections in compliance with 12 C.F.R. §§ 1024.35(e)(1)(A), as M&T did not correct the alleged errors, continued to claim the Borrowers were delinquent in their obligations, and continued to impose late fees and other charges against the Loan.

169.   It is clear that M&T did not perform a reasonable investigation into the errors alleged by and through NOE #4, NOE #6, and NOE #7, as had M&T conducted a reasonable investigation, M&T would have readily determined that the Borrowers had been in full

compliance with their obligations under the Loan and that payments had been misapplied as Defendants agreed in response to NOE #9. See *Exhibit CC* and *DD*.

170.    In failing to properly respond to NOE #1, NOE #4, NOE #5, NOE #6, and NOE #7, M&T committed a separate and distinct violation of 12 C.F.R. § 1024.35 for each such notice of error to which they failed to properly respond.

171.    But-for M&T's failure to reasonably investigation and properly and permanently correct the errors alleged by and through NOE #4, NOE #6, and NOE #7, Borrowers would not have had to send follow-up notices of error and incur fees, costs, and expenses in preparing and mailing the same by and through Certified U.S. Mail, including but not limited to NOE #9.

172.    M&T's actions are part of a pattern and practice of behavior in conscious disregard for Borrowers' rights and M&T's obligations pursuant to Regulation X.

173.    As a direct and proximate result of M&T's actions, Borrowers have suffered actual damages including but not limited to incurring legal fees to retain Counsel to continuously assist in bringing M&T's errors to their attention and ultimately to prepare, file, and prosecute this case to remedy M&T's wrongful conduct.

174.    As a result of M&T's actions, Borrowers have suffered, and continue to suffer, significant damages including other legal expenses, other economic loss, as well as anxiety, loss of sleep, and emotional and mental distress as further outlined, *supra*.

175.    As a result of M&T's actions, M&T is liable to Borrowers for actual damages, statutory damages costs, and attorneys' fees.

### COUNT  THREE: AGAINST M&T
### VIOLATIONS OF 12 C.F.R. § 1024.36(c)
### [Failure to timely acknowledge NRRG RFIs]

176.    Borrowers restate and incorporate herein all of their statements and allegations contained in the paragraphs one (1) through one hundred twenty-seven (130) in their entirety, as if fully rewritten.

177.    12 C.F.R. § 1024.36(a) provides that "[a] servicer shall comply with the requirements of this section for any written request for information from a borrower that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and states the information the borrower is requesting with respect to the borrower's mortgage loan."

178.    Comment 1 of the Official Interpretations of the CFPB to 12 C.F.R. § 1024.36(a) provides that "[a]n information request is submitted by a borrower if the information request is submitted by an agent of the borrower."

179.    12 C.F.R. § 1024.36(c) provides that a servicer must acknowledge in writing receiving an information request from a borrower within five (5) days of receipt.

180.    Borrowers sent each of the three (3) NRRG RFIs to M&T via Certified U.S. Mail to M&T's self-designated address for the receipt of requests for information pursuant to 12 C.F.R. § 1024.36(b). See *Exhibits Q, R, and S*.

181.    M&T received the each of the NRRG RFIs on November 6, 2015.

182.    M&T failed to send written notice to Borrowers acknowledging receipt of each of the NRRG RFIs within five (5) business days of their receipt of the same on or about November 6, 2015.

183.    Although the NRRG RFI Acknowledgment was dated November 5, 2015, such correspondence could not have been generated on such date as M&T did not receive the NRRG RFIs until the following day.

184.    M&T clearly did not send the NRRG RFI Acknowledgment within five (5) business days of November 6, 2015 because the NRRG RFI Acknowledgment did not reach NRRG until November 28, 2015. Had the NRRG RFI Acknowledgment been timely sent, NRRG would have received it sooner than November 28, 2015.

185.    M&T's actions in failing to send written notices acknowledging receipt of each of the NRRG RFIs constitute clear violations of 12 C.F.R. § 1024.36(c).

186.    As a result of M&T's failure to timely acknowledge the NRRG RFIs, Borrowers have suffered actual damages as detailed, *supra*, including but not limited to the fact that Borrowers were caused to incur fees and costs to draft and send NOE #5 to M&T via Certified U.S. Mail that Plaintiff would not have incurred but for M&T's failure. See *Exhibit T*.

187.    M&T's actions are believed to be part of a pattern and practice of behavior in conscious disregard for Borrowers' rights.

188.    As a result of M&T's actions, M&T is liable to Borrowers for actual damages, statutory damages, costs, and attorneys' fees.

**COUNT  FOUR: AGAINST M&T & BAYVIEW**
**VIOLATIONS OF FLORIDA CONSUMER COLLECTIONS PRACTICES ACT**
**("FCCPA"), FLA. STAT. § 559.72(9)**

**(Attempting to enforce a debt knowing the debt is not legitimate)**

33

189.   Borrowers restate and incorporate herein all of their statements and allegations contained in the paragraphs one (1) through one hundred twenty-seven (130) in their entirety, as if fully rewritten.

190.   At all relevant times, M&T and Bayview were each a person as defined by Fla. Stat. § 559.55.

191.   At all relevant times, Defendants were seeking to collect from Borrowers a debt arising from a transaction incurred primarily for personal, family or household purposes, the Loan for the Home.

192.   At all relevant times Defendants attempted to enforce a consumer debt from Borrowers with knowledge that the debt is not legitimate in violation of Fla. Stat.  § 559.72(9). Specifically, despite receiving notice from Borrowers and their agents on multiple occasions over the course of nearly two (2) years that Borrowers were current on the Loan and providing information and documents in support thereof, Defendants attempted to collect charges Borrowers did not owe.

193.   As a result of Defendants' actions, Defendants are liable to Borrowers for actual damages, statutory damages, costs, and attorneys' fees.

## PRAYER FOR RELIEF

**WHEREFORE** Plaintiffs Donna Finkel and John Civetti, respectfully request that this Court enter an order granting Judgment against Defendant M&T Bank and Defendant Bayview Loan Servicing, LLC, for the following:

A. For actual damages, all costs and reasonable attorney fees against Defendants jointly and severally, as applicable, as to all allegations contained in Counts One and Four;

B.  For actual damages, all costs and reasonable attorney fees against Defendant M&T Bank, as to all allegations contained in Counts Two and Three;

C.  For statutory damages of Two Thousand Dollars ($2,000.00) against Defendants for each and every violation of 12 C.F.R. §1024.35 contained in Count One.

D.  For statutory damages of Two Thousand Dollars ($2,000.00) against Defendant M&T Bank for each and every violation of 12 C.F.R. §1024.35 contained in Count Two.

E.  For statutory damages of Two Thousand Dollars ($2,000.00) against Defendant M&T Bank for each and every violation of 12 C.F.R. §1024.36 contained in Count Three;

F.  For total statutory damages of One Thousand Dollars ($1,000.00) against Defendants for the violations of Section 559.72(9) contained in Count Four;

G.  For all other relief this Court may deem just and proper

## JURY DEMAND

Borrowers respectfully demand a trial by jury on all such claims that may be so tried.

Dated November 22, 2017.

Respectfully Submitted,

**THE ADVOCACY GROUP**
333 Las Olas Way, Suite CU3-311
Fort Lauderdale, Florida 33301
Telephone: (954) 282-1858
Facsimile: (844) 786-3694
Email: service@advocacypa.com

0

/s/ *Jessica L. Kerr, Esq.*
Jessica L. Kerr, Esquire
FLORIDA BAR NO. 92810
Pamela E. Chavez, Esquire
FLORIDA BAR NO. 121078

The Dann Law Firm
728 Euclid Ave., Ste. 300
Cleveland, OH 44115
Ph. 216/373-0539
Fax 216/373-0536
notices@dannlaw.com

/s/ Brian Flick, Esq.
Brian Flick, Esq.
Ohio Reg. #081605 *(pro hac vice to be filed)*

36